# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

| | |
|---|---|
| In Re:<br>SHELTON S. BEACH<br>BEVERLY S. BEACH<br><br>Debtor. | Bankruptcy Case<br>No.  08-40013-JDP |

| | |
|---|---|
| SHELTON S. BEACH<br>BEVERLY S. BEACH<br>husband and wife, and R. SAM<br>HOPKINS, Trustee,<br><br>    Plaintiff,<br><br>vs.<br><br>BANK OF AMERICA as successor<br> in interest to COUNTRYWIDE<br> HOME LOANS, INC., as<br>successor in interest to AEGIS<br> WHOLESALE CORPORATION,<br><br>    Defendant. | Adv. Proceeding<br> No.  10-8114-JDP |

## MEMORANDUM OF DECISION

MEMORANDUM OF DECISION - 1

Appearances:

> Brent T. Robinson, ROBINSON ANTHON & TRIBE, Rupert, Idaho, for Plaintiff.
>
> James A. Spinner, Steven D. Wood,  SERVICE & SPINNER, Pocatello, Idaho Plaintiff.
>
> Patrick McNulty, Robert A. Faucher, Ted S. Tollesfson, HOLLAND & HART, LLP, Boise, Idaho for Defendant.

## Introduction

Bank of America ("the Bank")[1] made a loan to chapter 7[2] debtors, Shelton and Beverly Beach ("Debtors"), secured by their home.  When the Bank later sought to foreclose, Debtors filed a state court complaint asserting that the Bank had violated the Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq*. ("TILA"), and the Idaho Consumer Protection Act, Idaho Code §§ 48 Ch. 6 *et seq*. ("ICPA").  The state court issued a temporary restraining order ("TRO") staying the Bank's non-judicial foreclosure, the action was removed to federal district court, and then referred to this Court.  At that point, the chapter 7 trustee of Debtors' bankruptcy estate,

---

[1] Apparently, the loan was made by the Bank's predecessors in interest. For convenience, though, this decision will refer to the lenders collectively.

[2] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532.

MEMORANDUM OF DECISION - 2

R. Sam Hopkins ("Trustee"), was joined as a party-plaintiff in the action.

The Bank has moved to dismiss Debtors' complaint for lack of

subject matter jurisdiction and failure to state a claim for relief under Fed.

R. Civ. P. 12(b)(1) and 12(b)(6).  Debtors and Trustee oppose that motion.

A hearing on the Bank's motion was held on February 9, 2011.  Having

considered the record, the parties' submissions, and applicable law, this

Memorandum disposes of the motion.

### Facts[3] and Procedural Background

Debtors and the Bank closed a loan transaction on March 7, 2005, in

connection with Debtors' purchase of their home.  The loan was secured

by a deed of trust in favor of the Bank.  Among the various loan

documents provided by the Bank to Debtors at that time was a Truth in

Lending Disclosure Statement ("Disclosure Statement") that recited the

amount financed ($141,651.24), the finance charge ($146,959.67), and an

annual percentage rate of 5.013%.  Debtors allege they also executed an

"Adjustable Rate Rider" on March 7, 2005, without receiving an additional

Disclosure Statement from the Bank, even though that document

---

[3] All facts are taken from Debtors' complaint and the briefing, and, unless
otherwise noted, appear to be undisputed.

MEMORANDUM OF DECISION - 3

purported to alter the finance charge, interest rate, and monthly payments.

Verified Complaint at 4, Adv. Dkt. No. 1.

Debtors filed for chapter 7 bankruptcy relief on January 9, 2008.

Almost ten months later, on September 28, 2008, the Bank was granted

relief from the automatic stay.  Soon thereafter, the Bank initiated a non-

judicial foreclosure action to foreclose the deed of trust on Debtors' home.

In response, Debtors filed a state court complaint against the Bank

on December 28, 2009.  In their complaint, Debtors allege that the Bank

violated both TILA and ICPA.  The complaint sought an injunction

prohibiting the Bank from foreclosing, and statutory damages.  According

to Debtors, the Bank's TILA violations included:  failure to provide

required disclosures; failure to conspicuously disclose required

information; failure to incorporate certain charges into the disclosed

finance charge; and an understatement of the loan's annual percentage

rate.  Verified Complaint at 5–6, Adv. Dkt. No. 1.

The ICPA violations alleged in Debtors' complaint include that the

Bank threatened legal action against Debtors without a proper basis for

doing so, and that the Disclosure Statement given to them by the Bank was

misleading.  *Id.* at 6.  Besides the assertion that the Bank improperly

MEMORANDUM OF DECISION - 4

threatened them with legal action, Debtors did not plead any additional

details, such as the date of the alleged threat, to support their allegation.

*See id.*

After reviewing Debtors' complaint, the state court entered a TRO

prohibiting the Bank from foreclosing on Debtors' home *nunc pro tunc* to

January 13, 2010.  The TRO was to remain in effect until the case was

resolved on its merits.  That resolution has been delayed, in part because

the Bank caused the action to be removed to federal district court, which,

in turn, referred the action to this Court on November 17, 2010.  Trustee

joined the action as an indispensable party on January 13, 2011.

The Bank filed a motion to dismiss this action on January 11, 2011,

based on two theories:  (1) that the statute of limitations on Debtors' TILA

and ICPA claims had run prior to the filing of this action; and (2) that the

claims are property of the bankruptcy estate, may only be raised by

Trustee, and, therefore, the Court lacks subject matter jurisdiction over the

action because Debtors lack standing to raise the statutory claims.

After Trustee joined as a party to these proceedings, he responded to

the Bank's statute of limitations arguments by asserting a TILA right of

rescission claim, which he contends may be brought for up to three years

MEMORANDUM OF DECISION - 5

after a consumer credit transaction. The Bank responded to Trustee's

claim, asserting that rescission is not appropriate for a residential

mortgage loan, and, further, that Trustee's claim for rescission is untimely.

## Discussion

### I.    Motion to Dismiss – Standards.

Fed. R. Civ. Proc. 12(b) ("Rule 12(b)") provides seven defenses,

including "lack of subject matter jurisdiction," Rule 12(b)(1), and "failure

to state a claim upon which relief can be granted," Rule 12(b)(6), which

may be raised by motion in response to a complaint. Both rules are

implicated here.

#### A.    Rule 12(b)(1).

The Bank asserts a Rule 12(b)(1) defense as to Debtors' claims

because they "are property of [Debtors' bankruptcy] estate under 11 U.S.C.

§ 541(a)(1)." The Bank's Motion to Dismiss at 4, Adv. Dkt. No. 25. In the

Bank's view, because all of the claims asserted by Debtors are property of

the bankruptcy estate, they may only be asserted by Trustee, and Debtors

lack standing in this action. Therefore, the Bank argues, the Court lacks

subject matter jurisdiction to adjudicate the claims.

Questions regarding standing to assert claims pertain to a federal

court's subject matter jurisdiction and are properly raised under Rule

12(b)(1).  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  A Rule 12(b)(1)

motion may be used to attack subject matter jurisdiction either facially or

factually.  *Id.*  The Bank's assertion that Debtors lack standing to prosecute

their claims is a facial subject matter jurisdiction attack.  In evaluating a

facial attack, the Court must determine whether a complaint's allegations

are sufficient on their face to invoke federal jurisdiction.  *See Safe Air for

Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  In doing so, the

Court must accept the allegations of the complaint as true.  *United States, ex

rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1189 (9th Cir. 2001).

      B.    <u>Rule 12(b)(6)</u>.

The Bank also moves to dismiss Debtors' complaint for failure to

state a claim under Rule 12(b)(6), based on an assertion that the applicable

statutes of limitations had run on Debtors' claims before they filed their

state court suit, and on the Bank's standing argument.  While standing is

properly raised in a Rule 12(b)(1) motion, it is not proper in a Rule 12(b)(6)

motion for failure to state a claim.  *White*, 227 F.3d at 1242.

A Rule 12(b)(6) motion tests a claim's legal sufficiency.  *Navarro v.*

*Block*, 250 F.3d 729, 732 (9th Cir. 2001).  In evaluating such a motion, the Court construes a complaint's allegations in the light most favorable to the plaintiff.  *Blyler v. Hemmeter* (*In re Hemmeter*), 242 F.3d 1186, 1189 (9th Cir. 2001).  As long as a claim is "plausible," it survives a Rule 12(b)(6) challenge.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–58 (2007).  A claim is plausible so long as it is based on a cognizable legal theory and has sufficiently alleged facts to support that theory.  *See Johnson v. Riverside Healthcare Sys., LP*, 534 F. 3d 1116, 1121–22 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).  While pleading of specific facts is not necessary, a complaint must plead enough facts for a stated claim to be plausible on its face.  *Twombly*, 550 U.S. at 570. If, based on the pleaded facts, the Court cannot infer more than the "mere possibility of misconduct," a plaintiff has not sufficiently plead entitlement to relief.  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009).

## II.    The Bank's Dismissal Motions.

### A.    The Idaho Consumer Protection Act Claims.

Debtors allege that the Bank violated the ICPA by threatening legal action against them without a proper basis, and by giving them a

MEMORANDUM OF DECISION - 8

misleading Disclosure Statement at loan closing.  The Bank challenges

those allegations for failure to state a claim and lack of subject matter

jurisdiction due to a lack of standing.  The Court concludes that Debtors

did not plead sufficient facts to allow the Court to determine that they

have a claim for an improperly threatened legal action.  In addition,

Debtors' Disclosure Statement claim is time-barred by the ICPA statute of

limitations.  Because both of Debtors' ICPA claims may be dismissed for

failure to state a claim, the Court need not reach the Bank's subject matter

jurisdiction concerns.

1.    Improperly threatened legal action.

Debtors' complaint does not include sufficient factual allegations to

allow the Court to state a claim against the Bank for improperly

threatening legal action.  In pleading such a claim, Debtors must provide

sufficient facts to demonstrate that their claim is plausible on its face.  *See*

*Twombly*, 550 U.S. at 570.  In their complaint, Debtors have merely alleged

that the Bank engaged in a "threatening of legal action without a proper

basis."  Verified Complaint at 6, Adv. Dkt. No. 1.  Without more

information, including when the alleged threat occurred, the Court cannot

determine, among other things, whether Debtors' claim would be barred

MEMORANDUM OF DECISION - 9

by the applicable statute of limitations, or whether Debtors have a plausible claim.  Because Debtors have not plead a facially plausible claim for improperly threatened legal action, dismissal of that claim is proper.

2.     Misleading Disclosure Statement.

Analysis of the Bank's challenge to Debtors' other ICPA claim is somewhat more complicated.  The ICPA statute of limitations states:

> No private action may be brought under this act
> more than two (2) years after the cause of action
> accrues.

Idaho Code § 48-619.  As can be seen, to determine whether Debtors have a timely Disclosure Statement ICPA claim, the Court must first determine when their alleged cause of action "accrued."

In Idaho, a cause of action accrues when one party may sue another. *See Singleton v. Pichon*, 635 P.2d 254, 256 (Idaho 1981); *Galbraith v. Vangas, Inc.*, 655 P.2d 119, 122–23 (Idaho Ct. App. 1982).  While the Bank argues for what is essentially a fraud standard to determine when one party may sue another under the ICPA,[4] the legislature expressly provided for limited

---

[4] For some reason, in the case cited by the Bank as providing the ICPA standard, the federal district court cited a fraud case and applied the fraud standard to the ICPA statute of limitations.  *See* The Bank's Memorandum at 6, Adv. Dkt. No. 25-1 (relying on *Performance Chevrolet, Inc. v. Market Scan Info. Sys.*,

(continued...)

MEMORANDUM OF DECISION - 10

private-party ICPA causes of action.  Idaho Code § 48-608(1) provides:

> Any person who purchases or leases goods or
> services and thereby suffers any ascertainable
> loss of money or property, real or personal, as a
> result of the use or employment by another
> person of a method, act or practice declared
> unlawful by this chapter, . . . may bring an action
> to recover actual damages or one thousand
> dollars ($1,000), whichever is greater . . . .

Under this statute, before an "accrued" claim arises under the ICPA, a

person must purchase or lease goods or services, and thereby suffer an

ascertainable loss.  In addition, the ascertainable loss must be the result of

a practice declared unlawful by the ICPA, which includes those practices

identified in Idaho Code § 48-603.  Section 48-603, in turn, provides

additional elements necessary to the accrual of an ICPA claim:  the

offending party must be a "person" who, in the conduct of a trade or

---

[4](...continued)
*Inc.*, 402 F.Supp.2d 1166, 1171–72 (D. Idaho 2005) (citing *Nerco Minerals Co. v. Morrison Knudsen Corp.*, 90 P.3d 894, 901 (Idaho 2004)).  However, it would seem that the fraud statute of limitations standard is not appropriate in ICPA cases because, while the deceptive nature of many ICPA injuries shares similar characteristics with fraud, not all of the fraud elements are required to prove an ICPA violation.  *See State ex. rel. Kidwell v. Master Distributors, Inc.*, 615 P.2d 116, 122–23 (Idaho 1980).  Notably, neither reliance by an injured party nor the offending party's intention to deceive must be demonstrated in a successful ICPA claim.  *Compare id.* (discussing ICPA claim requirements), *with Chavez v. Barrus*, 192 P.3d 1036, 1047 (Idaho 2008) (identifying fraud claim elements).

MEMORANDUM OF DECISION - 11

commerce, knows, or with an exercise of due care should know, that he is committing one of the acts specified in Idaho Code § 48-603.

Upon review of the ICPA claim elements, and without deciding whether the Bank violated the ICPA, the Court finds that, if the Bank violated the ICPA, that violation occurred at the loan closing on March 7, 2005, when the Adjustable Rate Rider was executed by Debtors.  It was then that Debtors would have suffered any ascertainable injury, and that any cause of action accrued.  The statute of limitations period, therefore, began to run from that date.  As a result, Debtors' December 28, 2009, complaint was not timely, and their Disclosure Statement ICPA cause of action must be dismissed.

Both of Debtors' ICPA claims will be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

B.    Truth in Lending Act Claim.

Debtors' TILA claim is also based on the information in the Bank's Disclosure Statement.  Again, the Bank moves for dismissal based on failure to state a claim due to statute of limitations issues, and asserts that

MEMORANDUM OF DECISION - 12

the Court lacks subject matter jurisdiction because Debtors lack standing

to assert the claim.

1.      <u>Statute of Limitations</u>.

TILA's statute of limitations states:

> Any action under this section may be brought in
> any United States district court, or in any other
> court of competent jurisdiction, within one year
> from the date of the occurrence of the violation . .
> . . This subsection does not bar a person from
> asserting a violation of this subchapter in an
> action to collect the debt which was brought more
> than one year from the date of the occurrence of
> the violation as a matter of defense by
> recoupment or set-off in such action, except as
> otherwise provided by State law.

15 U.S.C. § 1640(e).  While, in general, there is a one year bar against

offensive TILA violations actions, there is no such bar where TILA

violations are raised as a defense to a debt collection action.  In this case,

while Debtors have sought damages, they have asserted their TILA claim

as a defense to the Bank's action to collect the loan and foreclose on their

home.  Therefore, to determine whether Debtors' TILA claims against the

Bank are time barred, the allegations must first be correctly classified as

MEMORANDUM OF DECISION - 13

either offensively or defensively raised.

The Bank asserts that Debtors' allegations cannot in any fashion be construed as defensive because (1) non-judicial foreclosure is not an "action" that allows for the right of recoupment, and (2) Debtors filed the complaint raising the TILA violations, which the Bank characterizes as instituting the action offensively.

a. Non-judicial foreclosure is an action to collect a debt.

Recoupment as a defense is only available where a party responds to a debt collection action. *See* 15 U.S.C. § 1640(e). While some district courts have found that a non-judicial foreclosure action is not an "action" for TILA purposes, this Court disagrees with those decisions.

For instance, in *Ortiz v. Accredited Home Lenders, Inc.*, 639 F.Supp.2d 1159 (S.D. Cal. 2009), a case frequently relied upon by other courts and by the Bank, a district court summarily determined that "[15 U.S.C.] § 1640(e) itself defines an 'action' as a court proceeding." *Id.* at 1165. In making that determination, the *Ortiz* court relied upon the following 15 U.S.C. § 1640(e) language, as quoted in an explanatory parenthetical: "Any action . . . may

MEMORANDUM OF DECISION - 14

be brought in any United States district court, or in any other court of competent jurisdiction . . ." *See Ortiz* at 1165. While the court's edited version of 15 U.S.C. § 1640(e) supports its interpretation, which is that all "actions" referred to by the statute of limitations must be court proceedings, a reading of the statute in its entirety does not support that conclusion.

The TILA statute of limitations distinctly refers to two separate types of "actions." *See* 15 U.S.C. § 1640(e). The first type is an "action under this section." *Id.* ("Any action *under this section* may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation . . . ." (emphasis added)). Given a plain reading, this statutory language does not restrict *all* actions to court proceedings, but rather explains that, where an offensive TILA violation action is brought, that particular action must be prosecuted in a court proceeding. *Id.*

The second type of action referred to by the statute of limitations is "an action to collect [a] debt." *Id.* While the *Ortiz* court resorted to state

MEMORANDUM OF DECISION - 15

law definitions to define such an action, doing so exceeded the usual bounds of federal law statutory construction. *See, e.g., Transwestern Pipeline Co., LLC v. 17.19 Acres of Property Located in Maricopa County*, 627 F.3d 1268, 1270 (9th Cir. 2010). Instead, the first step in determining a federal statute's meaning is to look at the text's plain meaning. *Id.* Words in the text will be given their ordinary, contemporary, common meanings, unless otherwise defined. *Id.* When needed, dictionary definitions may be used to determine language's plain meaning. *See id.*

In this Court's view, to understand the term "action" as used in the TILA statute, the Court must look to the plain and ordinary meaning of the term, rather than to state law.[5] The ordinary, common meaning of

---

[5] This Court recognizes that the TILA statute of limitations refers to state law:

> This subsection does not bar a person from asserting a violation of this subchapter in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action, *except as otherwise provided by State law.*

15 U.S.C. § 1640(e) (emphasis added). That reference, however, appears to solely direct resort to state law for determination that recoupment is allowed as a general defense. In Idaho, recoupment is recognized as a defense to the

(continued...)

MEMORANDUM OF DECISION - 16

"action" is "[t]he process of doing something; conduct or behavior."

BLACK'S LAW DICTIONARY 32 (9th ed. 2009). An action to collect a debt, unless otherwise defined, would be the process of collecting a debt. A non-judicial foreclosure action, which results in the collection of a debt through the extrajudicial process of selling real property subject to a deed of trust at auction, *see* Idaho Code § 45-1505, is obviously "an action to collect [a] debt" as that term would be understood in its ordinary, common meaning. As a remedial, consumer-protection law, there is no indication that Congress meant to restrict "an action to collect [a] debt" to anything other than the general processes of debt collection. The Court, therefore, concludes that a non-judicial foreclosure sale is an action to collect a debt for the purposes of the TILA statute of limitations.

        b. <u>Debtors raised the TILA violations as a defense to the Bank's non-judicial foreclosure action</u>.

Even though a party asserts a TILA violation as a plaintiff, those

---

[5](...continued)
enforcement of negotiable instruments. *See* Idaho Code § 28-3-305(1)(c); *Zener v. Velde*, 17 P.3d 296, 299 (Idaho Ct. App. 2000).

allegations may still be defensive to a debt collection action.  *See, e.g.,*

*Botelho v. Citicorp Mortg., Inc.* (*In re Botelho*), 195 B.R. 558, 563 (Bankr. D.

Mass. 1996) (finding that a debtor-initiated adversary proceeding was

defensive when raised in response to a creditor's foreclosure action).  *See*

*also Coxson v. Commonwealth Mortg. Co. of America, L.P.* (*In re Coxson*),  43

F.3d 189, 194 (5th Cir. 1995) (finding that creditor's filing of a proof of

claim was "an action to collect [a] debt," and that debtor raised TILA

violations defensively despite being the plaintiff in an action); *Jones v.*

*Progressive-Home Fed. Sav. And Loan Assoc.* (*In re Jones*), 122 B.R. 246, 250

(W.D. Pa. 1990) (finding that debtor's TILA claims were responsive to

creditor's proof of claim, and were raised defensively, despite debtor being

the complaint's plaintiff); *Wentz v. Saxon Mortg.* (*In re Wentz*), 393 B.R. 545,

556–57 (Bankr. S.D. Ohio 2008) (same).

       In this action, the TILA violations alleged in Debtors' complaint

were asserted defensively in response to the Bank's initiation of a non-

MEMORANDUM OF DECISION - 18

judicial foreclosure action.[6]  Because Debtors' recoupment claims were raised defensively to a debt collection action, the TILA one-year statute of limitations does not apply, and the TILA violations allegations are timely.[7]

> 2.  <u>Standing</u>.

The Bank argues that Debtors do not have standing to assert TILA violations because any claim against the Bank became property of Debtors' bankruptcy estate when they filed their bankruptcy petition.  As such, the Bank argues that only Trustee can raise the claims.

Of course, Trustee has now been properly joined as a party-plaintiff in this adversary proceeding, and also opposes the Bank's motion to dismiss.  If the Bank is correct, Trustee may properly assert the TILA claims advanced by Debtors, and the Court has subject matter jurisdiction

---

[6]  At the motion hearing, the Bank's counsel remarked that Debtors' complaint was "presumably [filed] in an attempt to stave off Bank of America's pending non-judicial foreclosure of their residence."  Hearing on the Bank's Motion to Dismiss (February 9, 2011).

[7]  Of course, to the extent Debtor sought to recover money damages from the Bank in excess of any amounts owed on the loan, such a claim would indeed be barred by the one-year statute of limitations.  Debtors have conceded as much, and insist their intentions are to merely defend against the Bank's collection efforts.

MEMORANDUM OF DECISION - 19

to entertain this action.  Even so, the Court finds that Debtors also have standing to assert the TILA claims.

There are two components to the doctrine of standing in federal litigation.  *See Warth v. Seldin*, 422 U.S. 490, 498 (1975).  First, a party must meet the constitutional standing requirements of Article III.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 5601–61 (1992).  Second, a party must satisfy prudential standing limitations.  *Valley Forge Christian College v. Americans United for Separation*, 454 U.S. 464, 471 (1982).

a.  <u>Constitutional Standing</u>.

A party satisfies the constitutional standing threshold if he has suffered an injury, caused by the opposing party, which will likely be redressed by the relief sought from the court.  *See Lujan*, 504 U.S. at 560–61. To prove standing in response to a motion to dismiss based on the pleadings, all that a party asserting standing must offer is a general factual allegation of injury resulting from the defendant's conduct.  *Id.* at 561.

Here, Debtors have claimed a $100,000 homestead exemption in the value of the property on which the Bank seeks to foreclose.  Schedule C,

MEMORANDUM OF DECISION - 20

Bk. Dkt. No. 16.  In other words, if the Bank's non-judicial foreclosure

action is successful, Debtors' economic interest in their homestead will be

adversely impacted.  *See Schwab v. Reilly*, 130 S.Ct. 2652, 2662 (2010)

(stating, generally, that debtors have an interest in exempt property).

Because the Bank's non-judicial foreclosure action would potentially

deprive Debtors of their exempt interest in their home, and because the

recoupment requested in connection with Debtors' TILA claim would

allow them to recover some of their home's value, Debtors have shown

constitutional standing to bring their claim against the Bank.

At the same time, Debtors' homestead exemption only extends to

the first $100,000 in the value of their home.  If a liquidation of the home

would net more than $100,000, the bankruptcy estate could also potentially

be negatively impacted by the Bank's non-judicial foreclosure action.  Or,

put another way, if a recoupment of more than $100,000 is available as

against the Bank's loan, any value in the home created thereby would be

non-exempt property of the estate.  Therefore, the bankruptcy estate,

represented by Trustee, also has an interest in Debtors' recoupment

MEMORANDUM OF DECISION - 21

defense, and also has constitutional standing to raise the TILA violations.

b.   <u>Prudential Standing</u>.

In addition to the Article III constitutional standing requirements, the federal judiciary has developed a set of self-imposed limits on the exercise of jurisdiction.  *Bennett v. Spear*, 520 U.S. 154, 162 (1997).  One of those judicially developed limitations is that a complaining party must assert their own legal rights and interests.  *Warth*, 522 U.S. at 499–500.

When a bankruptcy petition is filed, a bankruptcy estate is created that includes "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)(1).  Because the Bank's alleged TILA violations occurred prior to Debtors' bankruptcy, the Bank argues that Debtors' TILA violations recoupment defense became property of the bankruptcy estate, and is no longer "owned" by Debtors.  As a result, the Bank insists that, in raising the TILA violations, Debtors are not asserting their own legal rights and interests, but are, rather, advancing the estate's legal rights and interests.  The Court disagrees.

Section 541(a)(1) encompasses offensive causes of action based on

MEMORANDUM OF DECISION - 22

pre-petition events, and those actions may only be brought by a

bankruptcy case trustee. *See Turner v. Cook*, 362 F.3d 1219, 1225–26 (9th

Cir. 2004). Debtors, however, have not instituted an offensive cause of

action; they have raised TILA violations as a matter of defense by

recoupment under TILA's statute of limitations.

Section 558 of the Code governs a debtor's defenses, and states:

> The estate shall have the benefit of any defense
> available to the debtor as against any entity other
> than the estate, including statutes of limitation,
> statutes of frauds, usury, and other personal
> defenses. A waiver of any such defense by the
> debtor after the commencement of the case does
> not bind the estate.

In other words, while § 541(a)(1) effectively transfers a debtor's causes of

action into the bankruptcy estate, the debtor still has access to, and may

assert, personal defenses. A leading treatise has explained the reasons for

the different treatment:

> [T]he trustee's right under section 558 to assert
> the debtor's defenses differs from the trustee's
> exclusive right to assert the debtor's causes of
> action. The reason for this difference is clear. A
> cause of action is an asset of the estate to be used
> as the trustee sees fit. By contrast, a defense is

MEMORANDUM OF DECISION - 23

> something that may prevent an unjust claim
> against the estate.  If a defense can be raised by
> both the trustee and the debtor, the possibility of
> recovery from the estate is minimized.

5 COLLIER ON BANKRUPTCY ¶ 558.01[1][a] (Alan N. Resnick & Henry J.

Sommer eds., 16th ed.).

The Court concludes that both Debtors and Trustee have prudential

standing to advance the TILA violations as a defense by recoupment to the

Bank's claim.

**III.    Trustee's Rescission Claim**.

In response to the Bank's motion to dismiss, Trustee has also

asserted a TILA right of rescission claim under the facts of this case.  Such

a claim survives the usual TILA statute of limitations, and, instead, may be

raised within three years of a consumer credit transaction.  15 U.S.C.

§ 1635(f).

A right of rescission is generally available when a consumer credit

transaction results in a security interest being granted in the home of the

person to whom credit has been extended.  15 U.S.C. § 1635(a).  There are,

however, certain exceptions to that right.  *See* 15 U.S.C. § 1635(e).  One

MEMORANDUM OF DECISION - 24

such exception excludes any right of rescission where the consumer credit

transaction involves a residential acquisition mortgage.  15 U.S.C.

§§ 1635(e)(1), 1602(w); *In re Schweizer*, 354 B.R. 272, 280 (Bankr. D. Idaho

2006).  Here, the transaction between Debtors and the Bank involved a

residential mortgage for the acquisition of Debtors' home.  There is no

right of rescission associated with that transaction, and Trustee may not

pursue his rescission claim.

### Conclusion

Debtors did not sufficiently plead plausible ICPA claims against the

Bank.  On the other hand, Debtors' TILA violations claims are raised

defensively and are not time-barred.  While there is no right of rescission

in this case, either Debtors or Trustee may raise the Bank's alleged TILA

violations as a matter of defense by recoupment.

The Bank's motion to dismiss will be granted as to the ICPA claims.

No leave to amend will be granted because those claims are time-barred.

Trustee's rescission claim also lacks merit and will be dismissed.

However, the motion to dismiss will be denied as it relates to the Debtors'

MEMORANDUM OF DECISION - 25

and Trustee's TILA recoupment claims.  A separate order will be entered.


Dated:  February 25, 2011

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge


MEMORANDUM OF DECISION - 26