## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| In Re:<br>**SHELTON S. BEACH and**<br>**BEVERLY S. BEACH,**<br><br>                    **Debtors** | **Bankruptcy Case**<br>**No. 08-40013-JDP** |
| **SHELTON S. BEACH and**<br>**BEVERLY S. BEACH husband**<br>**and wife, and R. SAM**<br>**HOPKINS, Trustee**<br><br>                    **Plaintiffs,**<br>**vs.**<br><br>**WELLS FARGO BANK, NA,** *as*<br>*Trustee for the Holders of*<br>*SARM 2005-14,*<br><br>                    **Defendant.** | **Adv. Proceeding**<br>**No. 10-8114-JDP** |

## MEMORANDUM OF DECISION

**Appearances:**

Brent Robinson, ROBINSON, ANTHON & TRIBE, Rupert, Idaho,
Attorney for Plaintiffs Shelton and Beverly Beach.

MEMORANDUM OF DECISION - 1

Jim A. Spinner, SERVICE & SPINNER, Pocatello, Idaho, Attorney for Plaintiff R. Sam Hopkins.

Robert A. Faucher, HOLLAND & HART, Boise, Idaho, Attorney for Defendant Wells Fargo Bank, N.A.

## Introduction

Plaintiffs, chapter 7[1] debtors Shelton and Beverly Beach ("Debtors") filed an action asserting violations of the Idaho Consumer Protection Act ("ICPA") and the Truth in Lending Act ("TILA") to halt a non-judicial foreclosure initiated by Defendant Wells Fargo Bank, N.A. ("the Bank"). The Court dismissed Debtors' ICPA claims against the Bank in February 2011, Dkt. No. 40, and granted the Bank summary judgment on the TILA claim on August 1, 2011, Dkt. No. 73. The Bank now moves for an award of attorneys' fees and costs against Debtors in the amount of $149,005.91.[2]

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

[2] The Bank seeks $132,382.00 in attorneys' fees, $1,740.55 for taxable costs, and $14,883.36 in discretionary costs.

MEMORANDUM OF DECISION - 2

Debtors oppose this request.[3]  A hearing on the Bank's motion was held

September 27, 2011, and the Court took the issues under advisement.

Having considered the record, the parties' submissions, and applicable

law, this Memorandum disposes of the Bank's motion.  Rules 7052, 9014.

**Facts[4] and Procedural Background**

Debtors own a home in Blackfoot, secured by a promissory note

("the Note") currently held by the Bank.  Two months after Debtors filed

for chapter 7 bankruptcy relief on January 9, 2008, they stopped making

payments on the Note.  The Bank sought and received relief from the

automatic stay in Debtors' bankruptcy case, and, soon thereafter, sent

Debtors a Notice of Intent to Accelerate their loan.  *See* Dkt. No. 81-1 at 5.

Per that notice, the loan balance was accelerated with full payment

required by December 24, 2008.  *See id.*  When full payment was not

received, the Bank initiated non-judicial foreclosure proceedings against

---

[3]  Debtors do not dispute the Bank's taxable costs of $1,740.55.

[4]  Unless otherwise indicated, these facts are taken from the Court's prior
Memoranda of Decision in this adversary proceeding.  Dkt. Nos. 39, 71.

MEMORANDUM OF DECISION - 3

Debtors' home in 2009.  *See* Dkt. No. 81-1 at 7.

In response, Debtors filed a state court law suit against the Bank,[5]
alleging that, in connection with the loan, the Bank violated both TILA and
the ICPA.  At Debtors' request, the state court entered a Temporary
Restraining Order ("TRO") prohibiting the Bank from foreclosing on
Debtors' home *nunc pro tunc* to January 13, 2010.  The TRO was to remain
in effect until the dispute was resolved on its merits.

The Bank eventually filed a motion to dismiss Debtors' TILA and
ICPA claims on January 11, 2011.[6]  The Court held a February 9, 2011,
hearing, and, on February 25, entered an Order dismissing the ICPA

---

[5] While Debtors originally filed their complaint in state court, *see* Dkt. No.
1, the action was later removed to U.S. District Court for Idaho, and then referred
to this Court for resolution.  Dkt. Nos. 3, 22.

[6] Debtors' claim against the Bank arose before their bankruptcy case was
commenced, and hence, became part of the bankruptcy estate.  Chapter 7 trustee
R. Sam Hopkins ("Trustee") joined the adversary proceeding against the Bank as
an indispensable party plaintiff on November 22, 2010.  Though Debtors and
Trustee coordinated to preserve Debtors' claims against the Bank, Wells Fargo is
not seeking an award of fees or costs from Trustee, and this Memorandum refers
solely to Debtors.  The Bank asserted that the statute of limitations on Debtors'
TILA and ICPA claims had run prior to the filing of this action.  Its other
arguments for dismissal were cured when Trustee was added to the case.

MEMORANDUM OF DECISION - 4

claims.  The Court also determined Debtors' TILA claim could proceed.

Both Debtors and the Bank then moved for summary judgment.  A hearing on the parties' motions was held July 13, 2011, at which the Court denied Debtors' motion, and took the Bank's motion under advisement. After review of the record, the parties' submissions, and applicable law, the Court found that the loan documents provided to Debtors fully complied with TILA, and it granted summary judgment for the Bank.

Throughout this action, the Bank was represented by three attorneys from the Boise office of Holland & Hart, LLP; a paralegal assisted them. This is a summary of the fees billed in this case:

|  | Experience | Average Hourly Rate | Hours Billed | Amount Billed |
|---|---|---|---|---|
| **Attorneys** | | | | |
| Robert Faucher | 23 years | $314.20 | 174.7 | $54,891.50 |
| Ted Tollefson | 8 years | $215 | 40.9 | $8,793.50 |
| Patrick McNulty | 0 - 1 year | $180 | 351.2 | $63,216 |

MEMORANDUM OF DECISION - 5

| Paralegal | | | | |
|---|---|---|---|---|
| Carolyn Montgomery | (Not provided) | $145 | 37.8 | $5,481 |

Declaration of Robert Faucher at 3, Dkt. No. 77-1.

The Bank contends it is entitled to recover attorneys' fees and costs pursuant to Idaho Code § 12-120(3), and under the provisions of the Note and the Deed of Trust ("DOT") securing the Bank's loan. Debtors argue that the Bank is not entitled to any fees, though, if the Court finds the Bank is entitled to fees and costs, Debtors contend the requested fees and costs are excessive.

## Discussion

Though litigated in the Bankruptcy Court, whether the Bank may recover attorneys fees and costs in this action is governed by state law. *JB Constr., Inc. v. King* (*In re King*), 09.1 I.B.C.R. 32, 32 (Bankr. D. Idaho 2009) (quoting *Ford v. Baroff* (*In re Baroff*), 105 F.3d 439, 441 (9th Cir. 1997) ("[A] prevailing party in a bankruptcy proceeding may be entitled to an award of attorney fees in accordance with applicable state law if state law

MEMORANDUM OF DECISION - 6

governs the substantive issues raised in the proceedings.")).  Consistent

with case law governing the award of attorneys' fees in federal court, the

Idaho Rules of Civil Procedure provide:

> In any civil action the court may award
> reasonable attorney fees, which at the discretion
> of the court may include paralegal fees, to the
> prevailing party or parties as defined in Rule
> 54(d)(1)(B), when provided for by any statute or
> contract.

IDAHO R. CIV. P. 54(e)(1); *see also Bertola v. N. Wis. Produce Co.* (*In re Bertola*),

317 B.R. 95, 99 (9th Cir. BAP 2004) (indicating that, in federal court,

attorneys' fees are only to be awarded if authorized by statute or contract).

The Bank asserts Idaho Code § 12-120(3), the Note, and the DOT all

authorize its recovery of attorneys' fees in this instance.  The Debtors

disagree.

**I.      Idaho Code § 12-120(3) does not authorize recovery of the Bank's
attorneys' fees in this action.**

Idaho Code § 12-120(3) provides:

> In any civil action to recover on a[] . . . note . . .
> [or] negotiable instrument . . . unless otherwise
> provided by law, the prevailing party shall be

MEMORANDUM OF DECISION - 7

> allowed a reasonable attorney's fee to be set by
> the court, to be taxed and collected as costs.[7]

Under this statute, then, the Bank may recover attorneys' fees if it was the

prevailing party in a civil action, so long as the action was one to recover

on a note or negotiable instrument.

For the purposes of attorneys' fees determinations, the definition of

"civil action" is found in Idaho Rules of Civil Procedure 3(a). *See Smith v.*

*Washington Cnty.*, 247 P.3d 615, 619–20 (Idaho 2010); *Neighbors for*

*Responsible Growth v. Kootenai Cnty.*, 207 P.3d 149, 153 (Idaho 2009); *Sanchez*

*v. State Dept. of Corr.*, 141 P.3d 1108, 1112 (Idaho 2006). A civil action is one

"commenced by the filing of a complaint with the court," and a proceeding

that does not involve such a filing is not a civil action for the purposes of

awarding attorneys' fees. IDAHO R. CIV. P. 3(a)(1); *see Smith*, 247 at 619–20

(indicating that a petition for judicial review of an administrative decision

---

[7] While Idaho Code § 12-120(3) also provides that a prevailing party can recover attorneys' fees in a civil action arising out of a "commercial transaction," there is an unresolved issue of fact in this case as to whether the loan by the Bank to Debtors would fit that category. Resolution of this issue was not necessary to the Court's summary judgment decision, and the Court declines to engage in fact-finding in this procedural context.

MEMORANDUM OF DECISION - 8

is not a civil action); *Driver v. SI Corp.*, 80 P.3d 1024, 1030 (Idaho 2003)

(implying that a proceeding to confirm an arbitration award is not a civil

action); *Allen v. Blaine Cnty.*, 953 P.2d 578, 582–83 (Idaho 1998) (finding that

an appeal from an agency decision is not a civil action); *Swanson v. Kraft,*

*Inc.*, 775 P.2d 629, 636 (indicating that worker's compensation claims

proceedings are not civil actions).

The Bank's action to collect its debt from Debtors in this case took

the form of a non-judicial foreclosure proceeding.  By definition, the filing

of a complaint is not required to commence such a proceeding.  *See* Idaho

Code § 45-1506.  Accordingly, the Bank's non-judicial foreclosure efforts do

not render this adversary proceeding a civil action.

On the other hand, Debtors responded to the Bank's non-judicial

foreclosure proceeding by filing a state court complaint against the Bank,

thereby clearly commencing a civil action for the purposes of § 12-120(3).[8]

---

[8]  A defendant in an adversary proceeding may be awarded attorneys'
fees, so long as it prevails.  Idaho Code § 12-120(3); *see, e.g., Hopkins v. Saratoga
Holdings, LLC* (*In re Colvin*), 08.2 I.B.C.R. 63 (Bankr. D. Idaho 2008) (finding
prevailing defendants entitled to an award of attorneys' fees).

MEMORANDUM OF DECISION - 9

Debtors' civil action, however, asserted that the Bank had violated TILA

and ICPA.  In other words, it was not a civil action to recover on a note or

negotiable instrument.  The Bank did not pursue a counterclaim against

Debtors to recover on the Note.  Thus, while this adversary proceeding is a

civil action, it is not the type of civil action, *i.e.*, "[a] civil action to recover

on a[] . . . note . . . [or] negotiable instrument," for which § 12-120(3)

authorizes the recovery of attorneys' fees.

## II.    The Note and Deed of Trust authorize an award of attorneys' fees.

There are three provisions, one in the Note and two in the DOT

securing the Note, that the Bank asserts authorize it to recover attorneys'

fees in this case.  Of these, the provision in the Note[9] and one of the DOT

---

[9]  The Adjustable Rate Note provides:

> **(E)  Payment of Note Holder's Costs and Expenses.**
> If the Note Holder has required me to pay
> immediately in full as described above, the Note
> Holder will have the right to be paid back by me for
> all of its costs and expenses in enforcing this Note to
> the extent not prohibited by applicable law.  These
> expenses include, for example, reasonable attorneys'
> fees.

Note ¶ 7(E), Dkt. No. 50-5 at 4.

MEMORANDUM OF DECISION - 10

provisions[10] require the Bank to accelerate Debtors' loan and demand full

payment before it can recover attorneys' fees.  The Bank accelerated the

loan and demanded full payment on December 24, 2008.  *See* Dkt. No. 81-1

at 5.  Thus, the Bank is authorized to recover its attorneys' fees per those

provisions.

     In addition, ¶ 9 of the DOT provides:

> If (a) [Debtor] fails to perform the
> covenants and agreements contained in this
> [DOT], [or] (b) there is a legal proceeding that
> might significantly affect [the Bank's] interest in
> [Debtors' home] and/or rights under this [DOT]

---

[10]  The DOT provides:

> [The Bank] shall give notice to [Debtors] prior
> to acceleration following [Debtors'] breach of any
> covenant or agreement in this [DOT] . . . .  If the
> default is not cured on or before the date specified in
> the notice, [the Bank] at its option may require
> immediate payment in full of all sums secured by this
> [DOT] without further demand and may invoke the
> power of sale and any other remedies permitted by
> Applicable Law.  [The Bank] shall be entitled to
> collect all expenses incurred in pursuing the remedies
> provided in this [section], including, but not limited
> to, reasonable attorneys' fees . . . .

DOT ¶ 22, Dkt. No. 50-5 at 18.

MEMORANDUM OF DECISION - 11

> . . . [the Bank] may do and pay for whatever is
> reasonable or appropriate to protect [the Bank's]
> interest in the Property and rights under this
> [DOT] . . . includ[ing], but . . . not limited to: . . .
> (b) appearing in court; and (c) paying reasonable
> attorneys' fees to protect its interest in [Debtors'
> home] and/or rights under this [DOT] . . . .
> ****
> Any amounts disbursed by [the Bank]
> under this [section] shall become additional debt
> of [Debtors] secured by this [DOT].  These
> amounts shall bear interest at the Note rate from
> the date of disbursement and shall be payable,
> with such interest, upon notice from [the Bank] to
> [Debtors] requesting payment.

DOT ¶ 9, Dkt. No. 50-5 at 14.

Debtors' action to prevent the Bank from foreclosing on their house

based upon alleged TILA and ICPA violations is "a legal proceeding that

might significantly affect [the Bank's] interest in [Debtors' home]."

Therefore, pursuant to ¶ 9 of the DOT, the Bank was authorized to appear

in court and to incur reasonable attorneys' fees to protect its interest and

rights in the Debtors' home and under the DOT.  Rather than receiving an

outright award of fees, however, any fees recovered under this provision

MEMORANDUM OF DECISION - 12

are to be added to the debt secured by the DOT.[11]

Debtors' objection to the Bank's motion for attorneys' fees is essentially that, because the Bank incurred the fees in defense of Debtors' action, and not in direct efforts to "enforce" the Note, the attorneys' fees are not authorized.  Paragraph 9 of the DOT, however, authorizes recovery of fees incurred by the Bank in taking any reasonable or appropriate action to protect its rights and interests in Debtors' home and the DOT.  In addition, even under enforcement-type language, like that included in the other contract provisions, courts have found that a lender defending against actions intended to halt foreclosure proceedings is enforcing its contract rights.  *See, e.g., Gilbert v. World Sav. Bank, FSB,* 2011 995966 at *2 (N.D. Cal. Mar. 21, 2011) (finding that, under California case law,

---

[11]  This outcome is no different than the Bank's potential recovery under the other Note and DOT provisions.  Idaho statutes and case law indicate that reasonable attorneys fees incurred in connection with a non-judicial foreclosure sale are part of the indebtedness secured by a DOT, recoverable in a deficiency action.  *See* Idaho Code § 45-1507; *Wilhelm v. Johnston,* 30 P.3d 300, 305 (Idaho Ct. App. 2001); *Farber v. Howell,* 721 P.2d 731, 733–34 (Idaho Ct. App. 1986).  Thus, whether under ¶¶ 9 or 22 of the DOT or ¶ 7 of the Note, any "recovery" by the Bank is added to the debt secured by the DOT.  The Bank may pursue a deficiency action if a future foreclosure sale does not satisfy the secured amount.

MEMORANDUM OF DECISION - 13

"attorneys' fees incurred in the enforcement of a contract includes attorneys's fees incurred in defending against a challenge to the underlying validity of the obligation") (quoting *Siligo v. Castellucci*, 26 Cal. Rptr. 2d 439, 442 (Cal. 6th Dist. Ct. App. 1994) (internal quotation marks and citations omitted)).  While this precise issue has not arisen in the context of contractually authorized attorneys' fees in Idaho, the Idaho Court of Appeals has held that attorneys' fees incurred in defending against actions intended to halt foreclosure proceedings are compensable from non-judicial foreclosure sale proceeds under Idaho Code § 45-1507.  *Wilhelm v. Johnston*, 30 P.3d 300, 305–06 (Idaho Ct. App. 2001).  It is likely that Idaho courts would also find those fees to be authorized in enforcement-related provisions.

Regardless, because ¶ 9 of the DOT does not require "enforcement" of the Note as a prerequisite to recovering fees, the Bank may recover its reasonable attorneys' fees in connection with defending against Debtors' state court action even if Idaho courts were to find differently.

MEMORANDUM OF DECISION - 14

**III.    The amount of attorneys fees requested by the Bank is not reasonable.**

Of course, that the Bank is authorized by the DOT to recover attorneys' fees does not necessarily mean that the Bank is authorized to recover the total amount it has requested.  The DOT limits the Banks' recovery to "reasonable" attorneys fees.  Moreover, underlying all state court attorneys' fees awards is the requirement that the amount be reasonable.  *See* IDAHO R. CIV. P. 54(e)(1).

The Idaho Rules provide a list of factors that a court is to consider in determining the reasonableness of an attorneys' fees award.[12]  The Court is

---

[12]  Idaho Rule of Civil Procedure 54(e)(3) provides:

*Amount of Attorney Fees*.  In the event the court grants attorney fees to a party or parties in a civil action it shall consider the following factors in determining the amount of such fees:  (A)  The time and labor required.  (B)  The novelty and difficulty of the questions.  (C)  The skill requisite to perform the legal service properly and the experience and ability of the attorney in the particular field of law.  (D)  The prevailing charges for like work.  (E)  Whether the fee is fixed or contingent.  (F)  The time limitations imposed by the client or the circumstances of the case. (G)  The amount involved and the results obtained. (H)  The undesirability of the case.  (I)  The nature and

(continued...)

MEMORANDUM OF DECISION - 15

granted considerable discretion in making such an award, and need not

make a detailed finding for each Idaho Rule of Civil Procedure 53(e)(1)

factor in exercising that discretion.  *Elliott v. Darwin Neibaur Farms*, 69 P.3d

1035 (Idaho 2003).  In making an award in this case, though, some of those

factors deserve individual mention.

The first noteworthy factor in fixing the amount to award the Bank

for attorneys' fees in this case involves the amounts in controversy.  The

Court is not inclined, on these facts, to award the Bank over $132,000 in

attorneys fees in an action defending the Bank's DOT on a house worth

less than $200,000.  While not ultimately determinative, the

disproportionate nature of the requested fees when compared to the

amount of its monetary interest at stake if the Bank were prevented from

foreclosing, factors into the Court's reasonableness calculations.

---

[12](...continued)
length of the professional relationship with the client.
(J)  Awards in similar cases.  (K)  The reasonable cost
of automated legal research (Computer Assisted
Legal Research), if the court finds it was reasonably
necessary in preparing a party's case.  (L)  Any other
factor which the court deems appropriate in the
particular case.

MEMORANDUM OF DECISION - 16

The second important factor influencing the Court's decision in this case involves the amount of time spent by the Bank's attorneys in defending this action.  The Bank's request is based upon services provided by three different attorneys working on this adversary proceeding, and, combined, they billed a total of 566.8 hours.  In addition, the Bank's lawyers were assisted by a paralegal, who billed 37.8 hours for her services.  In comparison, Debtors' attorneys spent 166.5 hours to both prosecute this adversary proceeding and represent Debtors in their chapter 7 bankruptcy.[13]  While the Bank's attorneys might justify more than 166.5 hours in assisting their client to prevail against the TILA claim, that is not to say that spending 566.8 hours of time on this task was reasonable.

While the Court has high regard for the Bank's attorneys' law firm,

---

[13] Of course, the amount of time spent by Debtors' attorneys on this matter is not the sole standard against which the reasonableness of the Bank's fee request should be measured.  Even so, the amount of time spent by Debtors' lawyers suing the Bank sheds some light on whether the Bank's fees requested for time incurred in defending that suit are reasonable.  For example, McNulty billed more hours just in drafting, editing, and revising pleadings and briefs, and meeting with Faucher to discuss those documents, 197.9 hours, than Debtors' attorneys spent in their entire representation of Debtors, including in their chapter 7 case.  *See* Dkt. No. 77-2,

MEMORANDUM OF DECISION - 17

and the attorneys in that firm, the Court must conclude that the high

number of hours billed by the Bank's attorneys appears to have been

excessive.  It must be recalled that the issues in this adversary proceeding

were resolved at the summary judgment stage, without a trial or even

extensive discovery.  Within the eight months or so that the action was

actively litigated, the Bank filed 15 different motions, objections to motions,

or replies in support of motions, along with accompanying memoranda,

affidavits, and declarations.[14]  Ten of those pleadings were filed within the

thirty-three days prior to the hearing on the motions for summary

---

[14]  Motion for Relief from Expert Disclosure Deadline, Dkt. No. 15; Motion
to Transfer Case to the Bankruptcy Court and to Relieve Parties of Scheduling
Order, Dkt. No. 17; Motion to Dismiss, Dkt. No. 19; Motion to Dismiss, Dkt. No.
25; Reply in Support of the Bank's Motion to Dismiss, Dkt. No. 33; Stipulated
Motion to Extend Deadline to File Amendments or Join Additional Parties, Dkt.
No. 35; Motion for Summary Judgment, Dkt. No. 50; Opposition to Debtors'
Motion for Summary Judgment, Dkt. No. 57; Objection to and Motion to Strike
Affidavit of Shelton Beach, Dkt. No. 58; Motion for Enlargement of Time to File
Summary Judgment Reply, Dkt. No. 62; Reply in Support of the Bank's Motion
for Summary Judgment, Dkt. No. 63; Objection to and Motion to Strike Affidavit
of Beverly Beach, Dkt. No. 64; Motion to Shorten Time for Hearing on Objection
to and Motion to Strike Affidavit of Beverly Beach, Dkt. No. 65; Motion for Rule
56(d) Relief as to Debtors' Motion for Summary Judgment, Dkt. No. 67; Motion
to Shorten Time for Hearing on the Bank's Motion for Rule 56(d) Relief, Dkt. No.
68.

MEMORANDUM OF DECISION - 18

judgment.  While the Bank argues that the results obtained in this matter

justify the time billed and labor expended, and perhaps that is true in the

Bank's eyes, the Court must weigh the reasonableness of the fees the Bank

asks Debtors to pay, not just the results obtained, nor the amount of

paperwork generated by its lawyers.

The Bank also argues that the complex nature of TILA and the

novelty and difficulty of the questions in this case justify the large number

of hours billed.  In doing so, however, the Bank's attorneys undercut any

argument that they have specialized knowledge or experience "in the

particular field of law" required for resolution of this case, a factor that

may justify higher fees.  *See* IDAHO R. CIV. P. 53(e)(1).  At the same time,

most of the Bank's lawyers' time accountings show that most hours were

billed for purposes other than researching TILA-related issues.[15]

---

[15]  For example, while McNulty spent approximately 69.5 of his billed
hours conducting "research," only 32.7 of those hours were billed for what was
documented or clearly indicated to be TILA-related research.  *See* Dkt. No. 77-2.
Where McNulty billed a total of 351.2 hours in this adversary proceeding, 32.7
hours dedicated to TILA-related research hardly justifies a high fee award based
on the novelty or difficulty of the TILA statute.  The result is the same for the
Bank's other attorneys.  Faucher spent 7.4 hours of total research time, with the

(continued...)

MEMORANDUM OF DECISION - 19

Respectfully, the Court is not persuaded that the Bank's fee request is justified by the complexity of the issues.

While it is not a scientific endeavor, in exercising its discretion in this matter, the Court concludes that the amount of time for which reasonable fees may be awarded is likely somewhere between the time spent by Debtors' counsel prosecuting the action, and the Bank's attorneys in defending. Considering the factors identified above, recognizing that the Bank prevailed on only two of its three motion to dismiss contentions,[16] and discounting billed hours for travel time[17] and other questionable

---

[15](...continued)
majority, 6 hours, spent on TILA-related issues. *See id.* At the same time, 6 out of the 174.7 hours Faucher billed in this case does not justify higher fees due to the "novelty and difficulty of the question[]." Tollefson spent 2.4 of his 40.9 billed hours doing TILA-related research. *See id.*

[16] The Bank prevailed on its ICPA statute of limitations argument and on an argument that the Trustee did not have a right of rescission associated with the parties' transaction. The Court did not, however, dismiss Debtors' TILA cause of action.

[17] The Bank billed for travel time for Faucher and McNulty as they traveled from Boise to eastern Idaho for hearings. As stated by this Court in *In re West Grain, Inc.*, "[w]hile the Court will not suggest that a party cannot hire counsel from Boise to participate in cases where all hearings and the trial will be conducted at the opposite end of the State, it is presumptuous to assume that the

(continued...)

MEMORANDUM OF DECISION - 20

activities,[18] the Court finds that the Bank should be compensated for 400

hours of time spent by their attorneys in defense of this action,

proportioned among the three attorneys.[19]

Third, not only is the time for which the Bank's attorneys billed

unreasonable, it appears to the court that their billing rates are also

excessive in this context.  To justify the rates of its attorneys, the Bank

primarily relies on District of Idaho cases discussing reasonable fees in the

Boise legal market, as well as the affidavits of two Boise practitioners.  In

one of the decisions upon which it relies, the Bank notes the district court

found that an attorney with experience comparable to Faucher's could

---

[17](...continued)
opposing party should pay attorney fees calculated at regular billing rates for
time spent while counsel is in transit."  93 I.B.C.R. 89, 94 (Bankr. D. Idaho 1993).
Accordingly, an award for Faucher's 12 hours spent planning for, and traveling
to, eastern Idaho, and an award for McNulty's 15.1 hours in travel time to eastern
Idaho, is inappropriate.

[18]  For example, Faucher billed for, "participat[ing] in oral argument
practice with [McNulty]."  Dkt. No. 77-2 at 11.  While the Court recognizes the
importance of mentoring newer members of the bar, the expense of such activity
should not be borne by an opposing party.

[19]  Proportioned among them, the Court finds reasonable fees may be
awarded for 123 hours of Faucher's time, 248 hours of McNulty's time, and 29
hours of Tollefson's time.

MEMORANDUM OF DECISION - 21

"reasonably bill as much as $350 per hour in the Boise Market."  Reply in

Support of the Bank's Motion for Attorney Fees and Costs at 11, Dkt. No.

81.[20]  That decision also found, however, that a rate of $250 per hour would

be reasonable for someone with Faucher's experience.  *Restoration Indus.*

*Ass'n, Inc. v. Certified Restorers Consulting Group, LLC*, 2008 WL 821078 at *1

(D. Idaho 2008) (finding that Boise attorneys with 23-24 years of experience

"charge somewhere between $250.00 and $350.00 per hour").[21]  Such is

consistent with other decisions finding Boise "managing case partners,"

---

[20]  While the Bank cites to *W. Watersheds Project v. U.S. Dep't of the Interior*, 2010 WL 2898974 at *3 (D. Idaho 2010) as indicating as much, the Court assumes the Bank meant to cite to *Restoration Indus. Ass'n, Inc. v. Certified Restorers Consulting Group, LLC*, 2008 WL 821078 at *1 (D. Idaho 2008).

[21]  Of course, this litigation involved a loan made to eastern Idaho residents, secured by their eastern Idaho house, which action was prosecuted start-to-finish in eastern Idaho.  While in this Court's experience, there is an ample supply of capable bank attorneys practicing in eastern Idaho, no offer was made by the Bank to show what those lawyers charge for comparable work.  Again, the Court acknowledges that the Bank is free to employ counsel of its choice, but the "market" for determining the reasonableness of fees awarded to the Bank from its borrowers surely should include rates for lawyers outside of Boise.  Based upon the Court's experience, the rates of those good attorneys are considerably lower than those being sought by the Bank's attorneys.  Plainly put, while the Court expects that, on occasion, the Bank employs outside counsel at rates much higher than those being charged by its lawyers in this case, that does not necessarily mean those rates are reasonable for setting fee awards in eastern Idaho.

MEMORANDUM OF DECISION - 22

including those with more experience than Faucher, typically charge

between $250 and $300 per hour. *See, e.g., C & R Forestry, Inc. v. Consol.*

*Human Res., AZ, Inc.*, 2010 WL 231098 at *4 (D. Idaho 2010) (citing *Simplot v.*

*Nestle,* No. CV 06-141-S-EJL/CWD, Order at 18 (July 20, 2009)).

    In addition, this Court has found that, for one of the two attorneys

upon whose affidavit the Bank relies, the reasonable rate is $250. *Crawforth*

*v. Boise Tower Assocs., LLC* (*In re Charterhouse Boise Downtown Props., LLC*),

2010 WL 1049968 at *4 (Bankr. D. Idaho 2010).[22]  The Court therefore finds

that a reasonable rate for Faucher's fees is $250 per hour, which is within

the range of fees charged by attorneys with comparable experience and is

consistent with the rate approved by this and other courts within the

District of Idaho.

    In addition, in the Court's opinion, Tollefson's rate of $215 per hour

is too high for an associate attorney with approximately eight years of

---

    [22]  That attorney, Richard Boardman, had been practicing for 28 years, five
years longer than Faucher, when *In re Charterhouse Boise Downtown Props., LLC,*
was decided, and was billing at a pre-reduction hourly rate of $295. *See* 2010 WL
1049968 at *4; Dkt. No. 81.

MEMORANDUM OF DECISION - 23

experience.  The reasonable rate for associates with three to four years of experience has been found in other decisions to be "somewhere between $100 and $180 per hour," and attorneys with approximately 10 years of experience have been found to charge $190 per hour.  *Restoration Indus. Ass'n, Inc.*, 2008 WL 921078 at *1.  The Court also considers this range of rates appropriate based upon the many fee awards it routinely makes in its other cases.  Therefore, the Court finds that a reasonable rate for Tollefson's work is $180 per hour.

McNulty, who in this action demonstrated considerable skill considering his status as a first-year associate, billed at a rate of $180 per hour.  Other decisions have found the reasonable rate for recent law school graduates, or new bar members, to be $100 per hour.  *See Beach v. JD Lumber, Inc.*, 2010 WL 3942117 at *2 (D. Idaho 2010); *Martin v. Inclusion, Inc.*, 2007 WL 1412525 at *1 (D. Idaho 2007).  As noted, the reasonable rate for attorneys with even three years of experience ranges down to $100 per hour.  *Restoration Indus. Ass'n, Inc.*, 2008 WL 921078 at *1.  The Court finds a rate for McNulty's services of $125 per hour to be reasonable in this case.

MEMORANDUM OF DECISION - 24

Finally, the rate charged for paralegal services of $145 per hour is, plainly put, shocking to the Court. In other cases, reasonable paralegal rates were fixed at somewhere between $65 and $100 per hour. *See Beach*, 2010 WL 3942117 at *2 (finding a reasonable paralegal rate to be $75 per hour); *Balla v. Idaho State Bd. of Corr.*, 2010 WL 1338065 at *3 (D. Idaho 2010) (finding a reasonable paralegal rate to be $65 per hour); *C & R Forestry, Inc.*, 2010 WL 231098 at *4 (citing *Simplot*, No. CV 06-141-S-EJL/CWD, Order at 18, which noted that "paralegals with five or more years of experience" in the Boise market typically charge between $70 and $100 per hour)); *In re Charterhouse Boise Downtown Props., LLC*, 2010 WL 1049968 at *4 (finding a reasonable paralegal rate to be $65 per hour). Considering this range of values, and the services performed in this case, the Court finds that a rate of $75 per hour is reasonable for Montgomery's paralegal work.

Based on the reduced time and the reduced rates, the Court finds the base calculation for attorneys' fees in this case is, rounded:

MEMORANDUM OF DECISION - 25

| Attorney/Paralegal | Hours | Hourly Rate | Total |
|---|---|---|---|
| Faucher | 123 | $250 | $30,750 |
| Tollefson | 29 | $180 | $5,220 |
| McNulty | 248 | $125 | $31,000 |
| Montgomery | 38 | $75 | $2,850 |
| **Total** | | | **$69,820** |

## III.   Costs.

The Bank seeks to recover both taxable and what it terms "non-taxable" costs.  There is no objection to the Bank's taxable costs, and the Court deems those costs to be allowable.  *See* IDAHO R. CIV. P. 54(d)(1)(C). Debtors object to the Bank's requested non-taxable costs.

The Note and DOT provisions authorizing attorneys' fees also authorize the Bank to "pay for whatever is reasonable or appropriate" to protect its interest and rights in Debtors' home and under the DOT.  *See* DOT ¶ 9, Dkt. No. 50-5 at 14.  At the same time, the Idaho Rules of Civil Procedure limit the Court's ability to grant discretionary costs.[23]

---

[23] The Idaho Rules of Civil Procedure provide:

Additional items of cost not enumerated in, or in an

(continued...)

MEMORANDUM OF DECISION - 26

The Bank requests non-taxable costs totaling $14,883.36 for travel

expenses, meal expenses, lodging expenses, online research, expert witness

fees, printing expenses, and "other" expenses.[24]  Dkt. No. 77-2 at 48.  All of

those fees and expenses may be awarded pursuant to Idaho Rule of Civil

Procedure 54(d)(1)(D), at the Court's discretion.  *Wiggins v. Peachtree*

*Settlement Funding* (*In re Wiggins*), 02.1 I.B.C.R. 8, 15 (Bankr. D. Idaho 2002)

(citing *Richard J. and Esther E. Wooley Trust v. DeBest Plumbing, Inc.*, 983

P.2d 834, 841 (Idaho 1999)).  To recover those fees and expenses, however,

the Bank must sufficiently prove that the costs were "exceptional,

necessary, reasonably incurred, and should be in the interest of justice

assessed against the adverse party."  IDAHO R. CIV. P. 54(d)(1)(D); *In re*

*Wiggins*, 02.1 I.B.C.R. at 15 (citing *Bingham v. Montane Res. Assocs.*, 987 P.2d

---

[23](...continued)
  amount in excess of [certain costs awarded as a matter
  of right], may be allowed upon a showing that said
  costs were necessary and exceptional costs reasonably
  incurred, and should in the interest of justice be
  assessed against the adverse party.

IDAHO R. CIV. P. 54(d)(1)(D).

[24]  The Bank does not indicate what those "other" expenses might be.

MEMORANDUM OF DECISION - 27

1035, 1040 (Idaho 1999)).

The Bank has not asserted that the online research, printing, or "other" expenses were exceptional, necessary, or reasonably incurred. Indeed, as the modern-day equivalent of a law firm's library, it is hard to see how routine online legal research should not simply be one component of a firm's hourly rates.  Those expenses will, therefore, not be allowed.

While the Bank has asserted that the expert witness's "report evidences the skill, hard work, experience, and insight" of its witness, it has not argued that the fees incurred in hiring that witness were exceptional, necessary, or reasonably incurred.  The Court, in reviewing its summary judgment decision also finds that the expert witness fees were not necessary or reasonably incurred, and should not be assessed against Debtors.

Finally, the Bank asserts its various travel and travel-related expenses[25] "were necessary and contributed to the Court's being able to resolve the case at summary judgment."  The Bank has done nothing,

---

[25]  These include expenses for ground travel, meals, and lodging.

MEMORANDUM OF DECISION - 28

however, to show that the fees are exceptional, were reasonably incurred, or should be assessed against Debtors.  It was the Bank, rather than Debtors, who hired attorneys that would be required to travel long distances to attend court and other proceedings; the Bank should bear the cost of that decision.

## Conclusion

The Note and DOT authorize the Bank to recover its attorneys' fees and costs.  The Court finds that the Bank's reasonable attorneys' fees equal $69,820.  The Bank may also recover $1,740.55 in taxable costs.  Pursuant to Idaho law, these fees and costs may be added to the debt secured by the DOT, and, if the Bank pursues foreclosure, may be included in any deficiency action.[26]

---

[26] To be clear, while the Court's order will award attorneys fees and costs to the Bank, the Court will not enter orders enforcing the Bank's recovery of those amounts from Debtors.  As noted above, to collect these fees, if at all, the Bank must pursue the state law foreclosure process.  Incredibly, when the Court asked the Bank's attorney at the hearing about the status of the foreclosure on Debtors' home, he was unable to report any details.  It seems odd indeed that, while the Bank doggedly defended its right to foreclose in this action, no further steps to do so had been taken by the Bank since the injunction against the foreclosure was effectively dissolved.

MEMORANDUM OF DECISION - 29

A separate order will be entered.

Dated:  October 19, 2011

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge